IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

ANTIONE ZENO JONES                                                     PLAINTIFF

v.                              Civil No. 6:08-cv-06035

SHERIFF LARRY SANDERS;
DEPUTY DUNN; and
CAPTAIN STEED                                                        DEFENDANTS

## REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

Plaintiff Antione Zeno Jones (hereinafter Jones) filed this civil rights action pursuant to 42 U.S.C. § 1983.  He proceeds *pro se* and *in forma pauperis*.  Jones contends his constitutional rights were violated while he was incarcerated at the Garland County Detention Facility in Hot Springs, Arkansas.  Specifically, he contends his rights were violated in the following ways:  (1) he was denied adequate medical care; (2) he was subjected to unconstitutional conditions of confinement; (3) excessive force was used against him when he was pepper sprayed him; and (4) he was denied access to a meaningful grievance procedure.  Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3)(2007), the Honorable Robert T. Dawson, United States District Judge, referred this case to the undersigned for the purpose of making a report and recommendation.

Defendants filed a Motion for Summary Judgment (Doc. 14).  To assist Jones in responding to the Motion, a questionnaire was propounded (Doc. 18).  Jones responded to the questionnaire (Doc. 19)(hereinafter *Resp.*).  The Motion is now before the undersigned for issuance of this report and recommendation.

-1-

## I. Background

On September 13, 2007, Jones was arrested for possession of a controlled substance with intent to deliver, a class C felony, and fleeing, a class C misdemeanor, and booked into the Garland County Detention Facility (GCDF). *Resp.* at ¶ 1. He remained incarcerated at the GCDF until transferred to the Arkansas Department of Correction (ADC) on April 22, 2008. *Defendants' Exhibit* (hereinafter *Defts' Ex.*) 1 at ¶ 4.

Larry Sanders was during all times relevant to Jones' complaint the duly elected Sheriff of Garland County, Arkansas. *Defts' Ex.* 1 at ¶ 4. Captain Mel Steed and Deputy Tad Dunn were at all times relevant to the complaint employed at the GCDF. *Id.*

Dr. Kevin Hale is a medical doctor with a private practice located in Hot Springs, Arkansas. *Resp.* at ¶ 6. Dr. Hale is not an employee of Garland County. *Id.* at ¶ 7. Dr. Hale has entered in an agreement to visit inmates in the custody of the GCDF who are in need of medical treatment. *Defts' Ex.* 1; *Resp.* at ¶ 8 (without knowledge to agree or disagree). He is paid on a per patient basis. *Id.*

Dr. Hale normally sees inmates at the GCDF at least once a week. *Defts' Ex.* 1 at ¶ 5; *Resp.* at ¶ 9 (without knowledge to agree or disagree). Garland County has a policy that requires the provision of medical care to inmates. *Defts' Ex.* 1 at ¶ 5; *Resp.* at ¶ 10(A) (without knowledge to agree or disagree). According to Defendants, in the case of an inmate who needs non-emergency medical care, the inmate is directed to complete a medical request form which is reviewed by a supervisor and then forwarded to Dr. Hale for review. *Defts' Ex.* 1 at ¶ 5. If the inmate needs to see the doctor, the inmate is scheduled an appointment with Dr. Hale at his regular visit. *Id.* However, Jones states that on March 31, 2008, he submitted a medical request. *Resp.* at ¶ 10(B). He was advised that the ADC would not approve the request for him to see a back specialist. *Id.* No further

-2-

efforts were made to take him to a back specialist.  He therefore maintains he was denied medical treatment.  *Id.*

In emergency medical situations, inmates are either transported to the emergency room or an ambulance is summoned to provide emergency medical care to inmates.  *Resp.* at ¶ 10(C).

On October 17th, Deputy Morphew, Deputy Dunn, and Deputy Schwartz came to Jones' cell to take his blood pressure.  *Defts' Ex.* F; *Resp.* at ¶ 19.  Jones had been banging and kicking on his cell door.  *Id.*  Defendants maintain Jones was demanding that his blood pressure be taken immediately.  *Defts' Ex.* F.  However, Jones states he was not feeling well and only banged on the door trying to get someone's attention.  *Resp.* at ¶ 19.  After he got their attention and let them know he needed his blood pressure checked, he states he no longer beat on the door.  *Id.*  He states he was not being demanding.  *Id.*

Deputy Dunn entered Jones' cell and asked him to sit on the lower bunk.  *Resp.* at ¶ 20.  According to Defendants, Jones' blood pressure was taken and while it was taken he protested his recent lock-down and demanded to be let out of his cell.  *Id.* at ¶ 21(A).  Jones, however, states he had not been on lock-down prior to this incident.  *Id.*

The use of force report states that as the deputies were leaving his cell, Jones began pushing Deputy Dunn out of the cell while saying:  "I'm not staying in there anymore."  *Defts' Ex.* F.  Deputy Dunn began pushing Jones back into the cell and he ripped and tore the blood pressure cuff from Dunn's hands.  *Id.*

Jones, however, states he never placed his hands on any deputy that came to his cell.  *Resp.* at ¶ 21(B).  Jones indicates when the deputies were leaving they slammed the pressure cuff in the door.  *Id.* at ¶ 21(C).  If the pressure cuff was damaged, Jones states it must have occurred then.  *Id.*

-3-

In the report, Morphew indicates he used two short bursts of pepper spray against Jones to secure the safety of the deputies and return Jones to his cell. *Defts' Ex.* F. Jones denies there was any threat to the deputies at any time. *Resp.* at ¶ 22(A). He also states he was sprayed while he was in the cell. *Id.* Jones' cell door was then closed and he was told he would be fine in about thirty minutes to forty-five minutes. *Id.* at ¶ 22(B).

Morphew also indicates Jones was instructed to decontaminate with cold water in his sink. *Defts' Ex.* F. Jones denies he was told how to decontaminate himself. *Resp.* at ¶ 22(C).

Jones was charged with a disciplinary, Class 4, #8 infraction, interference with a staff member by physical intimidation, as a result of the incident. *Resp.* at ¶ 23(A). He was given a hearing and found guilty and given seven days lock-down. *Id.* at ¶ 23(B). He did not appeal the disciplinary conviction. *Id.* at ¶ 23(C).

On December 11, 2007, at 21:30 or 9:30 p.m. Deputy Rima went into Jones' cell and he stated he had fallen and hurt his back. *Resp.* at ¶ 13(A). Jones was told to fill out a medical complaint and that Rima would inform booking. *Id.* at ¶ 13(B).

Upon receipt of the medical request, detention center personnel forwarded the request to appropriate persons for response. *Resp.* at ¶ 14(A). Jones alleged he fell in his cell from the slippery floor and hurt his back. *Id.*

Jones indicates the toilet and sink in his cell were leaking and causing water to get on the floor. *Resp.* at ¶ 14(B). He maintains he reported the leaking on several occasions in November to detention center personnel including Deputy Rima, Deputy Waits, Deputy Dunn, Deputy Morphew, Deputy Hendrix, and others. *Id.* He states he reported the leaks both verbally and in writing. *Id.*

-4-

In response to his reporting the leaks, blankets were placed around the toilet. *Id.* To his knowledge, no one else had fallen. *Id.*

Jones was taken to St. Joseph's emergency room on December 11th. *Defts' Ex.* C; *Resp.* at ¶ 15. He was informed he had pulled a muscle on his left side. *Id.* He was prescribed Tylenol every four hours, Ibuprofen every six hours, ice and told to elevate the injured area as much as possible. *Id.* He was also told to limit weight bearing for three days. *Id.*

On December 27th, Jones submitted a medical complaint requesting a second opinion concerning his left side and asking to see Dr. Hale about a second mattress. *Resp.* at ¶ 16. On January 8, 2008, Jones was seen by Dr. Hale and prescribed Methocarbam, a muscle relaxer. *Id.* at ¶ 17.

On January 17th, Dr. Hale prescribe Robaxin (Methocarbam), a muscle relaxer. *Resp.* at ¶ 18. Lt. McMurrian signed the inmate prescription authorization form noting he had received the medication at the GCDF. *Id.*

Jones maintains that for one and one-half months he was in a cell where the toilet leaked so badly there was raw sewage on the floor of the cell. *Resp.* at page 18. He states the toilet would not flush. *Id.* Buckets were brought in to flush the toilet but only at night. *Id.* He wrote several grievances about the situation but he states none were ever returned. *Id.*

## II.  Applicable Standard

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986), the record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of

law."  Fed. R. Civ. P. 56(c).  "Once a party moving for summary judgment has made a sufficient

showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other

evidence, showing that a genuine issue of material fact exists."  *National Bank of Commerce v. Dow*

*Chemical Co.*, 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt

as to the material facts."  *Matsushita*, 475 U.S. at 586.  "They must show there is sufficient evidence

to support a . . . verdict in their favor."  *National Bank*, 165 F.3d at 607 (*citing Anderson v. Liberty*

*Lobby, Inc.,* 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)).  "A case founded on

speculation or suspicion is insufficient to survive a motion for summary judgment."  *Id.* (*citing Metge*

*v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)).

### III.  The Arguments of the Parties

Defendants contend Jones can present no set of facts demonstrating that they exhibited

deliberate indifference to his serious medical needs.  Similarly, Defendants deny that they acted with

deliberate indifference towards conditions at the jail that created a substantial risk of serious harm.

They maintain Jones submitted no grievances regarding a leaky toilet or water on the floor in his cell.

With respect to the use of the pepper spray, they maintain Morphew administered two short bursts

to secure the safety of the deputies and secure the facility.   Jones was then instructed to

decontaminate himself.  Finally, with respect to the grievance procedure, they indicate such a

procedure was in place and Jones clearly knew of the existence of the procedure. Finally, they

maintain Jones cannot prove any custom or policy of Garland County led to the alleged constitutional

violations.

Jones argues he was denied adequate medical care on March 31, 2008, when he was not sent to a back specialist.  He also contends he was subjected to inhumane conditions when he was given a cell where the toilet would not flush and it leaked so badly there was raw sewage on the floor. Jones contends he wrote several grievances about the situation but they were not returned.  With respect to the incident with the pepper spray, Jones maintains he was sprayed for no reason and then not informed how to decontaminate himself.  Finally, Jones contends the grievance procedure was not followed at the GCDF.

## IV.  Discussion

As noted above, Defendants have moved for summary judgment on each of Jones' claims. I will address each claim separately.

### A.  Denial of Adequate Medical Care

The Eighth Circuit analyzes both a pretrial detainee's and a convicted inmate's claim of inadequate medical care under the deliberate indifference standard.  *See Butler v. Fletcher*, 465 F.3d 340, 344 (8th Cir. 2006).  To prevail on an Eighth Amendment claim, Jones must prove that Defendants acted with deliberate indifference to his serious medical needs.  *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976). The deliberate indifference standard includes "both an objective and a subjective component:  'The [Plaintiff] must demonstrate (1) that [he] suffered [from] objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs.'"  *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000)(*quoting  Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir.1997)).

"For a claim of deliberate indifference, the prisoner must show more than negligence, more even that gross negligence, and mere disagreement with treatment decisions does not give rise to the

-7-

level of a constitutional violation.  Deliberate indifference is akin to criminal recklessness, which demands more than negligent misconduct." *Popoalii v. Correctional Medical Services*, 512 F.3d 488, 499 (8th Cir. 2008)(internal quotation marks and citations omitted).

In this case, Jones' denial of medical care claim centers on his medical request of March 31, 2008.  In this request he asked to see a back specialist.  *Resp.* at page 20.  In response, he was told the ADC would not approve a specialist.  *Id.*  If he wanted to be set up on Ibuprofen for the pain he was told to let Sgt. Ansley know.  *Id.*

Jones maintains this "refusal" is in direct contradiction of the GCDF policy that no inmate is denied medical care.  As mentioned above, following Jones' fall on December 11, 2007, he was taken to St. Joseph's emergency room where he was informed he had pulled a muscle on his left side. *Resp.* at ¶¶ 15.  Jones was then seen twice by Dr. Hale concerning the pulled muscle.  *Resp.* at ¶¶ 16 (December 28, 2007), 18 (January 17, 2008).  Neither the doctor who treated Jones at the emergency room or Dr. Hale recommended that he be seen by a back specialist.  Jones has offered no verifiable medical evidence to establish that he was harmed by the denial of a consultation with a back specialist.  *Cf. Crowley v. Hedgepeth*, 109 F.3d 500, 502 (8th Cir. 1997)(inmate who claims about delay in medical treatment must present verifying medical evidence of detrimental effect of delay).  I do not believe there are genuine issues of material fact as to whether deliberate indifference to Jones' serious medical needs was exhibited when his request to see a back specialist was denied.

Moreover, none of the named defendants, Sheriff Sanders, Deputy Dunn, or Captain Steed, were personally involved in responding to the March 31st request nor is there any indication they were consulted about the request.  *Resp.* at page 20 (response made by Sgt. Ansley).  *See Keeper v. King*, 130 F.3d 1309, 1314 (8th Cir. 1997)(no evidence that the defendants were doctors or were

personally involved in making medical decisions about treatment); *Mark v. Nix*, 983 F.2d 138, 139-40 (8th Cir. 1993)(section 1983 liability requires some personal involvement or responsibility).

### B. Conditions of Confinement

"[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." *County of Sacramento v. Lewis*, 523 U.S. 833, 118 S. Ct. 1708, 1719, 140 L. Ed. 2d 1043 (1998)(citation omitted).  The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones.  *See Farmer v. Brennan*, 511 U.S. 825, 832, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994).

The Eighth Amendment to the United States Constitution prohibits the imposition of cruel and unusual punishment.  U.S. Const. amend. VIII.  *See also Butler v. Fletcher*, 465 F.3d 340, 345 (8th Cir. 2006)(deliberate indifference standard of the Eighth Amendment applies to claims brought by pretrial detainees that prison officials failed to provide adequate food, clothing, shelter, etc.). The Cruel and Unusual Punishment Clause of the Eighth Amendment forbids conditions that involve the "wanton and unnecessary infliction of pain," or are "grossly disproportionate to the severity of the crime." *Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S. Ct. 2392, 69 L. Ed. 2d 59 (1981).

A prisoner alleging an Eighth Amendment violation must prove both an objective and subjective element. *See Revels v. Vincenz*, 382 F.3d 870, 875 (8th Cir. 2004)(*citing Wilson v. Seiter*, 501 U.S. 294, 298, 111 S. Ct. 2321, 115 L. Ed. 2d 271 (1991)).  "The defendant's conduct must objectively rise to the level of a constitutional violation by depriving the plaintiff of the minimal civilized measure of life's necessities.  The defendant's conduct must also reflect a subjective state of mind evincing deliberate indifference to the health or safety of the prisoner" *Revels*, 382 F.3d at

875 (citations and internal quotation marks omitted).  Deliberate indifference is established when the Plaintiff shows "the defendant was substantially aware of but disregarded an excessive risk to inmate health or safety." *Revels,* 382 F.3d at 875.  The standards against which a court measures prison conditions are "the evolving standards of decency that mark the progress of a maturing society." *Estelle v. Gamble*, 429 U.S. 97, 102, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976).

Keeping these principles in mind, I turn to an examination of the conditions of confinement alleged to exist in this case.  Jones maintains he was left in a cell for a month and a half where the toilet was leaking raw sewage on the floor and would not flush.  He asserts that buckets of water were brought in to flush the toilet but only at night.  On one occasion he slipped and fell on water in the cell.  On other occasions, Jones maintains he became physically ill as a result of the exposure to raw sewage.

In *Smith v. Copeland*, 87 F.3d 265 (8th Cir. 1996) the Eighth Circuit noted that not every "overflowed toilet in a prison amounts to a constitutional violation."  *Id.* at  268.  The court noted it had found constitutional violations to exist when inmates were forced to work without protective gear in "a shower of human excrement," and had ordered prisons to provide protective gear and to warn of the dangers of working in AIDS-contaminated waste.  *Id.* at 269.  It had also found a constitutional violation to exist when "an inmate was forced to endure a cell covered with filth and human waste for two full years."  *Id.*   The Eighth Circuit noted that "the length of time a prisoner is subjected to harsh conditions is a critical factor in our analysis."  *Id.*  It noted that "[c]onditions such as a filthy cell that "may be tolerable for a few days are intolerably cruel for weeks or months." *Id.*

-10-

In the case before it, viewed in the light most favorable to the plaintiff, the summary judgment materials showed the plaintiff was subjected to a "overflowed toilet in his cell for four days." *Smith*, 87 F.3d at 269. Under the totality of the circumstances, the court held the defendants entitled to judgment as a matter of law on the raw sewage claim. *Id.*

Under the totality of the circumstances, I believe Jones' allegations rise to the level of constitutional significance. Taking the facts in the light most favorable to Jones, he was exposed to the toilet leaking raw sewage for a month and a half. I find genuine issues of fact as to whether Defendants were deliberately indifferent to the risk of harm to Jones posed by the leaking toilet that would not flush.

With respect to the submission of grievances, Jones asserts that he submitted several grievances regarding the conditions in his cell. His summary judgment response is sworn to under penalty of perjury. A written statement under penalty of perjury is the equivalent of an affidavit for summary judgment purposes. *See e.g., DeMars v. O'Flynn*, 287 F. Supp. 2d 230, 242 (W.D.N.Y. 2003)(citations omitted).

### C. Excessive Use of Force/Application of Pepper Spray

"In addressing an excessive force claim brought under § 1983, analysis begins by identifying the specific constitutional right allegedly infringed by the challenged application of force." *Graham v. Connor*, 490 U.S. 386, 394, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989). "[T]he constitutional standard applied may vary depending upon whether the victim is an arrestee, a pretrial detainee, or a convicted inmate of a penal institution." *Andrews v. Neer*, 253 F.3d 1052, 1060 (8th Cir. 2001).

In this case, Jones was a pretrial detainee when the alleged incident of excessive force occurred. In *Johnson-El v. Schoemehl,* the Eighth Circuit court noted that:

-11-

[u]nlike convicted prisoners, the state has no right to punish [pretrial detainees]. *Bell v. Wolfish*, 441 U.S. 520, 535, 99 S. Ct. 1861, 1871-72, 60 L. Ed. 2d 447 (1979). Their confinement conditions are analyzed under the due process clause of the Fifth and Fourteenth Amendments rather than the Eighth Amendment's "cruel and unusual punishment" standard which is used for convicted prisoners. *Id.* The injuries detainees suffer must be necessarily incident to administrative interests in safety, security and efficiency. As a pretrial detainee, Freeman's excessive-force claim is properly analyzed under the due process clause of the Fourteenth Amendment. *See Graham v. Conner*, 490 U.S. 386, 395 & n. 10 (1989) (due process clause protects pretrial detainee from force amounting to punishment).

*Johnson-El v. Schoemehl*, 878 F.2d 1043, 1048 (8th Cir. 1989).

The courts generally analyze excessive force claims of pretrial detainees in the same way as those of arrestees. *Andrews v. Neer*, 253 F.3d 1052, 1060 (8th Cir. 2001)("The evaluation of excessive-force claims brought by pre-trial detainees, although grounded in the Fifth and Fourteenth Amendments rather than the Fourth Amendment, also relies on an objective reasonableness standard."). The use of force must be necessary to some legitimate institutional interest such as safety, security, or efficiency, and the force used must not be in excess of that reasonably believed necessary to achieve those goals. *Schoemehl*, 878 F.2d at 1048. The relevant inquiry being whether the officials behaved in a reasonable way in light of the facts and circumstances confronting them. *See e.g., Wilson v. Williams*, 83 F.3d 870, 875 (7th Cir. 1996).

Courts, including the Eighth Circuit, have concluded that "a limited application of [non-lethal chemical agent] to control a recalcitrant inmate constitutes a 'tempered response by prison officials' when compared to other forms of force." *Jones v. Shields*, 207 F.3d 491, 496 (8th Cir. 2000)(discussing cases from a number of jurisdictions holding the use of chemical agents did not constitute cruel and unusual punishment if reasonably necessary to maintain security and order or subdue a recalcitrant prisoner). The Eighth Circuit also noted that when "[u]sed in such manner and

-12-

purpose, its application should 'rarely be a proper basis for judicial oversight.'" *Jones*, 207 F.3d at 496.

In *Johnson v. Blaukat*, 453 F.3d 1108, 1113 (8th Cir. 2006), the court considered factors including whether the actions of the officers were defensive in nature or motivated by anger; whether the actions were necessary to maintain order or were excessive reactions by frustrated officers; and whether the amount of force used was commensurate with the situation. *Id.* The court noted additional material issues included whether or not the Plaintiff failed to comply with orders given by officers in the cell, whether the Plaintiff was actively resisting them, whether verbal orders or the application of less force would have been sufficient, whether or not a warning issued before the application of the pepper spray, and whether the Plaintiff suffered real injuries. *Id.*

Pepper spray (Oleoresin Capsicum (OC) spray) was used against Jones by Morphew on October 17, 2007. *Defs' Ex.* F. Two short bursts were applied. *Id.* Jones was then locked in his cell. According to Morphew, Jones was instructed to decontaminate himself with cold water in his sink and reassured he would be fine in thirty to forty-five minutes. *Defs' Ex.* F. Jones concedes he was told he would be fine in thirty to forty-five minutes but denies he was instructed to decontaminate himself in the sink. *Resp.* at ¶ 22(B) and ¶ 22(C). Jones was charged with, and found guilty of, a disciplinary for interference of a staff member by physical intimidation. *Resp.* at page 21.

In this case, I conclude there are no genuine issues of material fact as to whether the use of force by Morphew on October 17th was reasonable under the circumstances. Jones took a stance that could reasonably be viewed as aggressive. Jones' conviction of the disciplinary charge of

-13-

interference with a staff member by physical intimidation precludes him from arguing that he did nothing to interfere with Dunn.  Under these circumstances, a limited application of the pepper spray was a reasonable response.  *Jones*, 207 F.3d at 496.  Perhaps more importantly, none of the named Defendants were involved in the application of spray.

### D.  Inadequate Grievance Procedure

Jones contends his grievances were not handled properly, he did not always get responses, and he did not get copies of the grievances he did submit.  However, he has not identified a federal constitutional right that he was deprived of because of the alleged inadequacies in the grievance procedures.  He makes no argument that he was treated differently from other similarly situated prisoners, or that his grievances were ignored because of his exercise of his First Amendment rights, or that his ability to exercise any specific constitutional right was chilled by defendants' actions.

"Inmates do not have a constitutionally protected right to a grievance procedure.  Because a . . . grievance procedure does not confer any substantive right upon prison inmates, a prison official's failure to comply with the . . .  grievance procedure is not actionable under § 1983." *Ashann-Ra v. Commonwealth of Virginia*, 112 F. Supp. 2d 559, 569 (W.D. Va. 2000)(citations omitted).  *See also Adams v. Rice*, 40 F.3d 72, 74 (4th Cir. 1994)(inmates have no constitutional right to grievance procedure); *Blagman v. White*, 112 F. Supp. 2d 534 (E.D. Va. 2000)(inmate has no constitutional entitlement to grievance procedure), *aff'd*, 3 Fed. Appx. 23 (4th Cir. 2001).

"Rather, prison inmates have a constitutional right to petition the government for redress through a right of access to the courts." *Blagman*, 112 F. Supp. 2d at 542 (*citing Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991)).  A jail's "refusal to entertain such grievances does not compromise

-14-

the inmate's constitutional rights, as access to the courts would still be available." *Blagman*, 112 F. Supp. 2d at 542 (*citing, Scott v. Kelly*, 107 F. Supp. 2d 706 (E.D. Va. 2000), *aff'd*, 6 Fed. Appx. 187 (4th Cir. 2001)). "[A]ny alleged due process violation arising from the alleged failure to investigate his grievances is indisputably meritless." *Geiger v. Jowers,* 404 F.3d 371, 374 (5th Cir. 2005).

### V.  Conclusion

I therefore recommend that the Motion for Summary Judgment (Doc. 14) be granted in part and denied in part.  Specifically, I recommend the motion be granted with respect to Plaintiff's denial of medical care claims, his excessive force claims, and his inadequate grievance procedure claims. This leaves for later resolution Plaintiff's claims that he was subjected to unconstitutional conditions of confinement.

**The parties have ten (10) days from receipt of this report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

**DATED** this **20th day of July 2009**.


/s/ Barry A. Bryant
HON. BARRY A. BRYANT
UNITED STATES MAGISTRATE JUDGE

-15-